# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Jovon Davis, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16cv327 (CMH/TCB) |
| | ) | |
| Virginia Department | ) | |
| of Corrections, et al., | ) | |
|     Defendants. | ) | |

### MEMORANDUM OPINION

Jovon Davis, a Virginia inmate proceeding pro se, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. By Order dated April 29, 2016, plaintiff was directed to file a particularized and amended complaint, a signed consent form, and an exhaustion affidavit within thirty (30) days of the date of the Order. Dkt. No. 5. Plaintiff was notified that failure to comply with the April 29, 2016 Order could result in the matter being dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Id. By Order dated June 28, 2016, this matter was dismissed without prejudice for failure to comply with the April 29, 2016 Order. Dkt. No. 10. Plaintiff appealed and the United States Court of Appeals for the Fourth Circuit found that plaintiff had responded to the April 29, 2016 Order prior to the June 28, 2016 Order being entered; however, the Fourth Circuit also found that plaintiff did not respond to the April 29, 2016 Order until "about two weeks after the 30-day deadline." Appeal No. 16-6975. Accordingly, the Fourth Circuit vacated the June 28, 2016 Order and remanded this matter for further proceedings. Id.

1

By Order dated January 4, 2017, plaintiff was again directed to file a particularized and amended complaint. Dkt. No. 23. Plaintiff filed a second amended complaint on January 8, 2017, which is now the sole operative complaint in this matter. Dkt. No. 25. Defendants have now filed a Motion to Dismiss and memorandum in support. Dkt. Nos. 38-39. Plaintiff has filed an "Objection: Opposition to Defendants [sic] Motion to Dismiss," "Legal Standard: Opposition Memorandum in Support of Defendants [sic] Motion to Dismiss," and "Affidavit in Support of Plaintiffs [sic] Complaint filed under 42 U.S.C. § 1983" (collectively "Plaintiff's Response"). Dkt. Nos. 42-44. Defendants filed a Reply to Plaintiff's Response and plaintiff filed a surreply. Dkt. Nos. 45, 47. In addition, plaintiff filed a Motion for Summary Judgment. Dkt. No. 48. This matter is now ripe for adjudication. For the reasons that follow, defendants' Motion to Dismiss will be granted, plaintiff's Motion for Summary Judgment will be denied, and this matter will be dismissed.

## I. Background

Plaintiff asserts the following allegations which, for purposes of the Motion to Dismiss, are taken as true.[1] Plaintiff has been incarcerated at Indian Creek Correctional Center ("ICCC") since November 2015. Amend. Compl. at § IV. At that time, plaintiff was taking Remeron for his mood disorder diagnosis. Id. A few days after arriving at ICCC, plaintiff was seen by Drs.

---

[1] These allegations are taken from plaintiff's second amended complaint, Dkt. No. 25, as supplemented by Plaintiff's Response to defendants' Motion to Dismiss. In the second amended complaint, plaintiff raised claims under the Americans with Disabilities Act and the Rehabilitation Act, claims of deliberate indifference to a serious medical need in violation of the Eighth Amendment, and a claim that his right to due process was violated based on his inability to present a defense during a disciplinary hearing. To the extent plaintiff raises new claims in his Response, for example claims based on the conditions of his confinement, a response to a motion to dismiss is not the appropriate way to raise new claims. See Fed. R. Civ. P. 15. Therefore, they are not properly before the Court and will not be discussed.

Sayed Raza and James Brockington. Id. During that meeting, plaintiff "explain[ed] how [he] cannot live in a dormitory without being able to 'retreat' to [his] cell/a cell to escape the adversity of other inmates as well as the day to day prison conditions." Pl. Resp. to MTD. Plaintiff requested a "mental health transfer 'solely on the basis of [his] disability[,]'" which Dr. Raza refused "because of [plaintiff's] disability." Id. Instead, Dr. Raza changed plaintiff's prescription from Remeron to Zoloft and Attarax because he believed the Remeron was causing plaintiff's nightmares. Amend. Compl. at § IV. After one month on the new medications, plaintiff was "suffering adverse side effects which were: [his] hands [were] shaking, heat flashes, feeling irritable, violent, angry, frustrated, depressed, and [his] thoughts [were] hard to process in a struggling way, to think of something basic." Id. Plaintiff was also "singled out" by the other inmates in his dormitory because of his disability. Pls. Resp. to MTD.

Plaintiff filed an emergency grievance and was seen by Drs. Raza and Brockington. Amend. Compl. at § IV. Dr. Raza refused to prescribe Remeron, despite plaintiff's requests, and instead discontinued the Zoloft. Id. When plaintiff stated that he did not want to take Attarax, Dr. Raza told plaintiff that he "can take the Attarax or nothing at all." Id. Plaintiff complained that the combination of his current medication and the living conditions made him feel as if he was being "tortured." Id. Accordingly, plaintiff requested that he be placed in isolation "until [he] received the appropriate medical services and medicine and [Dr. Raza] said 'no'" even though plaintiff explained that he was "liable to get hurt." Id.; Pls. Resp. to MTD. Plaintiff filed several emergency grievances, again asking to be placed in isolation "because [he] was feeling irratable [sic] and violent" but his requests were refused. Id. In addition, one day "on the 'BlVD' [sic] in" ICCC Dr. Brockington told plaintiff that he could not "isolate [plaintiff] because [he] asked,"

3

Warden James Keeling told plaintiff he could not "isolate everyone who say[s] they have a disorder," and Unit Manager Pamela Woods told plaintiff "[i]nmates always ask to be isolated until [she] lock[s] them up." Id. A few days later, plaintiff was involved in an altercation with another inmate and was charged with aggravated assault. Id. Plaintiff injured this other prisoner because he was given the wrong medication and then was refused the accommodation of being placed in isolation for his safety and the safety of others. Pls. Resp. to MTD.

During the disciplinary hearing, Hearing Officer G.A. Haden "cut [plaintiff] off and obstructed [plaintiff's] ability to [present his defense] by threatening to have [plaintiff] removed from the disciplinary hearing if [plaintiff] continued to speak about how the incident could have been avoided if [plaintiff] had received the proper medical accommodations and medical services from Dr. Raza and ... Dr. Brockington." Amend. Compl. at § IV. Based on the aggravated assault charge, plaintiff was excluded by Keeling and Woods from participating in ICCC's therapeutic program. Pls. Resp. to MTD. Due to defendants' actions, plaintiff now suffers from heart failure, loss of income ...[,] and loss of good time credits." Amend. Compl. at § IV. Plaintiff names Warden James Keeling, Dr. Sayed Raza, Dr. James Brockington, Unit Manager Pamela Woods, and Hearing Officer G.A. Haden as defendants. Id. at § I. Plaintiff seeks monetary and declaratory relief. Id. at § V.

## II. Standard of Review – Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." A court may dismiss claims based upon dispositive issues of law. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could

4

be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 55.

On the other hand, where, as here, a complaint is filed by a prisoner acting pro se, it must be construed liberally no matter how unskillfully it is pleaded. Haines v. Kerner, 404 U.S. 519 (1972). A pro se litigant thus is not held to the strict pleading requirements demanded of attorneys. Estelle v. Gamble, 429 U.S. 97, 106–07 (1976); Figgins v. Hudspeth, 584 F.2d 1345 (4th Cir. 1978), cert. denied, 441 U.S. 913 (1979). For these reasons, a court's "power summarily to dismiss a prisoner's pro se complaint is limited." Figgins, 584 F.2d at 1347.

### III. Analysis – Motion to Dismiss

#### A. Americans with Disabilities Act and Rehabilitation Act Claims

The [Americans with Disabilities Act ("ADA")] provides that "no qualified individual with a disability shall, *by reason of such disability*, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (1994) (emphasis added). Furthermore, it is now settled that the ADA applies to state prisons and correctional facilities.

Scott v. Kelly, 107 F. Supp. 2d 706, 710 (E.D. Va. 2000), aff'd sub nom. Scott v. Moore, 6 F. App'x 187 (4th Cir. 2001) (citation omitted). "Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')." Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998). To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that (1) he has a disability; (2) he was otherwise qualified for the position; and (3) he has suffered an adverse employment action because of his disability. See Tyndall v. Nat'l Educ. Cntrs., Inc., 31 F.3d 209, 212 (4th Cir. 1994). The same analysis applies to claims arising under § 504 of the Rehabilitation Act ("RA"). See Spencer v. Earley, 278 F. App'x 254, 261 (4th Cir. 2008) ("This court has repeatedly held that [t]he ADA and Rehabilitation Act generally are construed to impose the same requirements, and because the language of the Acts is substantially the same, we apply the same analysis to both.") (internal quotation marks, citations, and alterations omitted).

Plaintiff first claims that his rights under the ADA and RA were violated because he was denied the provision of medical care in response to the negative side effects caused by the Zoloft and Attarax. Specifically, plaintiff was prescribed a different medication when he entered ICCC and when he complained that he was experiencing side effects, Dr. Raza decided that plaintiff should stop taking Zoloft. Plaintiff informed Dr. Raza that he preferred to go back on the Remeron, but Dr. Raza stated that it "was not compatible with the program at ICCC." Therefore, plaintiff's allegations establish that he was not actually denied medical care with regards to his prescriptions. Rather, plaintiff disagreed with the course of medical treatment he was provided.

6

Because plaintiff was not denied the benefit of medical services as to his prescriptions, he has failed to state a claim for a violation of his rights under the ADA and RA.

Next, plaintiff argues that his rights were violated when defendants refused to reasonably accommodate him by placing him in isolation to prevent him from hurting himself and others due to the negative side effects caused by the Zoloft and Attarax. Plaintiff asserts that this lead to his altercation with another inmate, his disciplinary hearing, and his inability to participate in therapeutic programs and, accordingly, these actions also violated his rights under the ADA and RA. In his response to the Motion to Dismiss, plaintiff makes the conclusory statement that he was denied placement in isolation because defendants discriminated against him solely based on his disability. However, this is contradicted by the allegations in the second amended complaint. Specifically, plaintiff infers, in the second amended complaint, that he was denied placement in isolation based on ICCC policies that have nothing to do with his disability.

Finally, plaintiff argues that he was "denied a fair hearing solely on the basis of [his] disability because ... Haden came into the hearing not trying to be partial to [plaintiff's] side of the story because of [plaintiff's] disability and what his co-workers told him about the case from their point of view." Despite plaintiff's conclusory statements to the contrary, plaintiff has not sufficiently alleged that Haden discriminated against him solely because of his disability. Rather, plaintiff is actually arguing that Haden did not give plaintiff's disability proper deference when considering the charges against him. Accordingly, plaintiff's claims under the ADA and RA will be dismissed for failure to state a claim upon which relief can be granted.

## B. Eighth Amendment Claims

Plaintiff claims that defendants Dr. Brockington and Dr. Raza were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, by not changing his medication back to Remeron and not placing him in isolation. To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Specifically, plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. See, e.g., Hall v. Holsmith, 340 Fed. Appx. 944, 947 & n.3 (4th Cir. 2009) (holding that flu-like symptoms did not constitute a serious medical need); Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious).

Second, he must allege deliberate indifference to that serious medical need. Under this second prong, an assertion of mere negligence or even malpractice is not sufficient to state an Eighth Amendment violation; instead, plaintiff must allege deliberate indifference "by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (recognized in Sharpe v. S. Carolina Dep't of Corr., 621 F. App'x 732, 733 (4th Cir. 2015) as overruled on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994)); see also Daniels v. Williams, 474 U.S. 327, 328 (1986). To do so, the prisoner must demonstrate that a defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to

8

be intolerable to fundamental fairness." Id. Significantly, a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Plaintiff has alleged nothing more than a disagreement over the course of his treatment. As previously stated, plaintiff was not denied medical service as to his prescriptions, rather, he disagreed with the course of treatment Dr. Raza chose. In addition, as to the placement in isolation, Dr. Raza's and Dr. Brockington's decision to not place plaintiff in isolation was a different course of treatment than what plaintiff wanted. Accordingly, plaintiff has failed to state a claim upon which relief can be granted based on a violation of his rights under the Eighth Amendment.

### C. Fourteenth Amendment Due Process Claim

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving an individual of life, liberty, or property without due process of law. A prisoner's liberty interest is generally limited to being free from conditions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 484 (1995). Specifically, a prisoner has protection against the arbitrary imposition of punishment by prison officials. See Wolff v. McDonnell, 418 U.S. 539, 558 (1974). He thus has a constitutionally protected interest in the procedural due process protections of a disciplinary hearing. Prisoners have a protected liberty interest in the procedural protections provided in prison disciplinary hearings. In these hearings, an inmate's due process rights are satisfied when he receives advance notice of the charges against him, receives written findings of the outcome of the hearing, and is able to call witnesses on his

behalf. Id. at 561-68. At the same time, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits." Id. at 566.

Plaintiff argues that Haden "cut [him] off and obstructed [his] ability to [present his defense] by threatening to have [him] removed from the disciplinary hearing if [he] continued to speak about how the incident could have been avoided if [he] had received the proper medical accommodations and medical services from Dr. Raza and ... Dr. Brockington." As stated above, it was not a violation of plaintiff's due process rights for Haden to inform plaintiff that he could not continuously repeat one of his arguments. Accordingly, plaintiff has failed to allege that his due process rights were violated.

### IV. Motion for Summary Judgment

Because plaintiff has failed to state a claim upon which relief can be granted, his Motion for Summary Judgment will be denied.

### V. Conclusion

For the reasons stated above, plaintiff has failed to state a claim upon which relief can be granted. Accordingly, defendants' Motion to Dismiss will be granted and plaintiff's Motion for Summary Judgment will be denied by an Order to be issued with this Memorandum Opinion.

Entered this 30th day of June 2017.

/s/ Claude M. Hilton
United States District Judge

Alexandria, Virginia